IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CHNJ INVESTORS, LLC,

                    Plaintiff,

          v.

ROBERT T. KOGER, et al.,

                    Defendants.

Civil Action
No. 12-1467 (JBS-KMW)

**OPINION**

APPEARANCES:

Michael S. Horn, Esq.
Patrick Papalia, Esq.
Archer & Greiner PC
Court Plaza South
West Wing
21 Main Street, Suite 353
Hackensack, NJ 07081
     Attorneys for Plaintiffs CHNJ Investors, LLC

Katherine Ann Escanlar, Esq.
Vincent Frank Papalia, Esq.
Saiber, LLC
One Gateway Center
13th Floor
Newark, NJ 07102-5311
     -and-
Claude D. Montgomery, Esq.
Joseph G. Selby, Esq.
Salans LLP
Rockefeller Center
620 Fifth Avenue
New York, NY 10020
     (Former) Attorneys for Defendants Robert T. Koger and
     Molinaro Koger, Inc.[1]

---

[1] After briefing on this motion was complete, defense counsel
moved to withdraw as counsel, which was granted by Order of the
Honorable Karen M. Williams entered on February 11, 2013,
effective March 13, 2013. [Docket Item 35.] No new counsel has
been substituted for Defendants upon the docket.

**SIMANDLE,** Chief Judge:

**I. INTRODUCTION**

Plaintiff CHNJ Investors ("CHNJ") brings this action against Defendants Robert T. Koger, Molinaro Koger, Inc. ("Molinaro Koger"), and Purcell, NJ LLC ("Purcell") alleging nine claims for relief[2] arising out of a series of transactions in which Defendants Robert T. Koger and Molinaro Koger were brokers coordinating the purchase and sale of a loan from the loan holder to Defendant Purcell and then to Plaintiff CHNJ. Plaintiff alleges that Defendants never intended to consummate the loan sale and, instead, engaged in a scheme to defraud CHNJ. Plaintiff alleges that Koger[3] made false statements to Plaintiff, forged documents, fraudulently induced Plaintiff to enter into certain agreements, and wrongfully kept deposits and partial payments that Plaintiff transmitted to Koger as part of the purchase.

---

[2] The nine claims for relief are (1) fraud – intentional misrepresentation and concealment, (2) negligent misrepresentation, (3) unjust enrichment, (4) conversion, (5) intentional misrepresentation and fraudulent misuse of the corporate veil, alter ego and undercapitalization, (6) breach of contract, (7) malpractice, (8) breach of duty of good faith and fair dealing, and (9) New Jersey Civil RICO.

[3] The First Amended Complaint refers to Robert T. Koger and Molinaro Koger, Inc. collectively as "Koger." (1st Am. Compl. ¶ 6.) In this Opinion, the Court will also refer to Robert T. Koger and Molinaro Koger, Inc. collectively as "Koger" because the Court cannot distinguish between the two parties in the allegations in Plaintiff's First Amended Complaint.

This matter comes before the Court on the Motion of Defendants Robert T. Koger and Molinaro Koger, Inc. to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).[4] [Docket Item 21.] The parties have attached documents to their briefing that purportedly support their respective arguments. The key issue is whether the Court can consider these documents because, even though they are referenced in the Complaint, the parties disputed their validity. For the reasons discussed below, the Court will not consider any of these documents because the documents are not undisputedly authentic, nor will the Court convert the motion to one for summary judgment at this time given the materially disputed authenticity of several of these documents.

Count Five, which alleges intentional misrepresentation and fraudulent misuse of the corporate veil, alter ego and undercapitalization, shall be dismissed without prejudice and with leave to amend. Defendants' motion to dismiss is denied in all other respects.

**II. PROCEDURAL HISTORY**

Plaintiff filed this action in Camden County Superior Court. Defendants Robert T. Koger and Molinaro Koger, Inc. ("the

---

[4] Defendant Purcell has not filed a motion to dismiss and will not be considered in the Court's analysis.

Koger Defendants") removed this action to this Court. [Docket
Item 1.] The Koger Defendants filed a motion to dismiss [Docket
Item 10] that was withdrawn without prejudice [Docket Item 17]
after Plaintiff filed its First Amended Complaint [Docket Item
12]. The Koger Defendants then filed the present Motion to
Dismiss the First Amended Complaint [Docket Item 21].

　　　　Jurisdiction is proper under 28 U.S.C. § 1332.[5]


**III. FACTUAL BACKGROUND**

　　　　On November 12, 2010, CHNJ consulted Koger[6] to act as its
broker in the purchase of a Loan, which was dated June 1, 2006,
had an original principal amount of $25,000,000.00, was executed
by P & P Cherry Hill Hospitality, LLC, and was secured by the
real and personal property located at 2349 West Marlton Pike,
Cherry Hill, NJ 08002 ("the Loan").[7] (1st Am. Compl. ¶ 11.) The

---

[5] Plaintiff CHNJ is a New Jersey LLC; Defendant Robert Koger is a
citizen of Virginia; Defendant Molinaro Koger, Inc. is
incorporated in Virginia and has its principal place of business
in Virginia; and Defendant Purcell NJ, LLC is incorporated in
Delaware with its principal place of business in New York. (1st
Am. Compl. ¶¶ 2-5.) Plaintiff seeks $2,125,000.00, which exceeds
the amount-in-controversy requirement of $75,000 under 28 U.S.C.
§ 1332(a).

[6] Plaintiff alleges that Robert T. Koger acted on behalf of
Molinaro Koger and had the power and authority to bind Molinaro
Koger. (1st Am. Compl. ¶ 6.)

[7] As this action is before the Court on a motion to dismiss, the
Court accepts as true all factual allegations in the Complaint.
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

property that secured the Loan was the Crowne Plaza Hotel in Cherry Hill, New Jersey, which was owned by P&P Cherry Hill Hospitality, LLC. (1st Am. Compl. ¶ 13.) The Crowne Plaza property was in foreclosure proceedings under the caption, <u>MTGLQ Investors, L.P. v. P&P Cherry Hill Hospitality, LLC</u>, Docket No. F-38939-10. (1st Am. Compl. ¶ 14.) MTGLQ Investors ("MTGLQ") held the Loan and wanted to sell it. (1st Am. Compl. ¶ 15.)

Plaintiff alleges that it entered into a Retainer Agreement ("Retainer") with Koger to purchase the loan and that, pursuant to this Retainer, Plaintiff gave Koger a refundable deposit of $1,000,000.00. (1st Am. Compl. ¶ 12.) Plaintiff also alleges that it loaned Koger $150,000.00 and that Koger never repaid the loan. (1st Am. Compl. ¶ 12.)

Plaintiff alleges that Koger entered into the Retainer as part of a scheme to defraud CHNJ and that Koger never intended to negotiate a fair and reasonable price to acquire the Loan on CHNJ's behalf or to close a legitimate deal with CHNJ. (1st Am. Compl. ¶ 16.) Plaintiff alleges that Koger violated its fiduciary duty to CHNJ by misleading CHNJ, making false representations about its negotiations with MTGLQ, failing to serve CHNJ's best interests, and using CHNJ's confidential information to CHNJ's detriment. (1st Am. Compl. ¶ 18.) CHNJ claims that Koger falsely informed CHNJ that MTGLQ refused to

sell the Loan to CHNJ or its principals and would not negotiate with CHNJ or its principals. (1st Am. Compl. ¶ 19.) Koger told CHNJ that the only way to purchase the Loan would be to conduct a simultaneous closing where MTGLQ would sell the Loan to Defendant Purcell NJ, LLC ("Purcell") and then Purcell would sell the Loan to CHNJ.[8] (1st Am. Compl. ¶ 19.)

Koger's fraud scheme allegedly also involved informing CHNJ that Purcell and MTGLQ had entered into a Confidentiality Agreement dated January 20, 2011 that MTGLQ had required as a condition precedent to commencing negotiations regarding the Loan. (1st Am. Compl. ¶ 20.) Koger told CHNJ that the Confidentiality Agreement prohibited Purcell from discussing the Loan with CHNJ or its principals. (1st Am. Compl. ¶ 20.) Plaintiff alleges that MTGLQ did not require the Confidentiality Agreement and did not prohibit communication with CHNJ and its principals. (1st Am. Compl. ¶ 21.) Plaintiff argues that Koger made these false representations in order to hide its scheme to defraud CHNJ. (1st Am. Compl. ¶ 22.)

In furtherance of this scheme, Koger and Purcell also allegedly prepared an Indemnification Agreement to be executed between Purcell, CHNJ, and P&P Cherry Hill Hospitality, LLC.

---

[8] Plaintiff alleges that Purcell was formed by Robert T. Koger, that Koger acted on Purcell's behalf, and that Koger had the power and authority to bind Purcell. (1st Am. Compl. ¶ 5.)

6

(1st Am. Compl. ¶ 23.) This Indemnification Agreement "falsely recited that MTGLQ had required Purcell to enter a Confidentiality Agreement as condition precedent to MTGLQ commencing negotiations with Purcell to sell the Loan . . . ." (1st Am. Compl. ¶ 23.) The Indemnification Agreement "purportedly required CHNJ and P&P Cherry Hill Hospitality, LLC to indemnify, hold harmless, defend, reimburse, and release Purcell and its affiliates from . . . claims, losses, damages, and the like suffered by Purcell and its affiliates in connection with the Confidentiality Agreement." (1st Am. Compl. ¶ 23.)

Koger and Purcell allegedly fraudulently induced CHNJ and P&P Cherry Hill Hospitality to execute the Indemnification Agreement in February 2011 based on false recitals, including a false representation that the Indemnification Agreement was essential for Koger and Purcell to effectuate sale of the Loan. (1st Am. Compl. ¶ 24.) Plaintiff asserts "because the representations made by Koger and Purcell were untrue and because no Confidentiality Agreement even existed between MTGLQ and Purcell, the Indemnity Agreement was a completely false and fraudulent document that had no legal effect and served no legitimate purpose." (1st Am. Compl. ¶ 24.) Plaintiff alleges that Koger used the Indemnification Agreement to hide its

7

fraudulent scheme and prevent CHNJ from discovering that Koger and Purcell were providing CHNJ with false information. (1st Am. Compl. ¶ 24.)

Purcell was purchasing the Loan from MTGLQ for $12,500,000.00, but Koger told CHNJ that the purchase price was $15,500,000.00. (1st Am. Compl. ¶ 25.) In reliance on that representation, CHNJ entered into a series of Agreements and released funds to Purcell. (1st Am. Compl. ¶ 26.) On April 27, 2011, CHNJ and Purcell entered into a Purchase and Sales Agreement ("PSA") to purchase the Loan for $15,500,000.00 based on Koger's false representation that $15,500,000.00 was the best possible price. (1st Am. Compl. ¶ 27.)  Pursuant to the PSA, the $1,000,000.00 that CHNJ had previously given to Koger was placed into escrow with Purcell's attorney. (1st Am. Compl. ¶ 27.) On May 1, 2011, a First Amendment to the PSA was executed. (1st Am. Compl. ¶ 28.) In accordance with the First Amendment, $1,000,000.00 was released to Purcell, CHNJ paid an additional $1,000,000.00 into escrow, and the closing date was extended at a cost to CHNJ of $25,000.00 per week. (1st Am. Compl. ¶ 28.) CHNJ extended the closing date for six weeks and paid the $1,000,000.00 for a total cost of $1,150,000.00. (1st Am. Compl. ¶ 28.)

8

During the due diligence process, CHNJ discovered that Purcell had signed an agreement with MTGLQ to purchase the Loan for $12,500,000.00, not $15,000,000.00, and that Koger and Purcell intended to keep the $3,000,000.00 difference for themselves.[9] (1st Am. Compl. ¶ 29.) After CHNJ made this discovery, Koger and Purcell agreed to reduce the price to $12,500,000.00. (1st Am. Compl. ¶ 29.) The parties also agreed to a $500,000.00 fee to Koger for the consultancy. (1st Am. Compl. ¶ 29.) Plaintiff alleges that "Koger and Purcell agreed to reduced [sic] the price to $12,500,000.00 in order to continue to mislead CHNJ about their lack of intent to ever close the sale of the Loan with CHNJ and the existence of their overall scheme to defraud CHNJ . . . ." (1st Am. Compl. ¶ 30.)

On June 25, 2011, CHNJ and Purcell signed a Second Amendment to the PSA, establishing the new sale price of $12,500,000.00 and providing that CHNJ would pay an additional $825,000.00 to Purcell. (1st Am. Compl. ¶ 31.) CHNJ allegedly paid Koger and Purcell $825,000.00 plus $25,000.00 in attorney fees. (1st Am. Compl. ¶ 31.) Plaintiff alleges that Koger and Purcell never returned this money to CHNJ, despite CHNJ's demands for an accounting of the funds. (1st Am. Compl. ¶ 31.) CHNJ argues that Koger and Purcell wrongfully kept the

---

[9] The First Amended Complaint refers to the initial purchase price inconsistently as both $15,000,000.00 and $15,500,000.00.

$850,000.00 sum as part of their scheme to defraud CHNJ. (1st Am. Compl. ¶ 31.)

On July 1, 2011, Purcell and CHNJ signed a Third Amendment to the PSA, indicating that the closing date would be July 30, 2011. (1st Am. Compl. ¶ 33.) CHNJ alleges that Koger and Purcell fraudulently induced CHNJ to sign the Third Amendment. (1st Am. Compl. ¶ 33.)

The Loan sale never closed and, as a result, CHNJ claims that Defendants defrauded it out of at least $2,125,000.00. (1st Am. Compl. ¶ 34.) CHNJ later discovered that "MTGLQ never informed Koger that . . . MTGLQ would not effectuate a deal to sell the Loan to CHNJ or its principals and that MTGLQ never informed Koger that MTGLQ would not negotiate directly or indirectly with CHNJ or its principals . . . ." (1st Am. Compl. ¶ 36.)

After the loan transaction coordinated by Koger failed, CHNJ and its principals engaged in negotiations directly with MTGLQ and agreed for CHNJ to acquire the Loan directly from MTGLQ. (1st Am. Compl. ¶ 37.) On April 10, 2012, MTGLQ, P&P Cherry Hill Hospitality, LLC, CHNJ, and other interested parties entered into a Consent Order pursuant to which MTGLQ assigned the loan to CHNJ and dismissed the Foreclosure Proceedings with prejudice. (1st Am. Compl. ¶ 37.) On April 10, 2012, P&P Cherry

10

Hill Hospitality, LLC, transferred ownership of the property that was collateral for the Loan to a CHNJ entity. (1st Am. Compl. ¶ 37.)

When CHNJ and MTGLQ were negotiating directly, MTGLQ told CHNJ that "MTGLQ and Purcell never entered into any Confidentiality Agreement of any kind . . . ." (1st Am. Compl. ¶ 38.) CHNJ "discovered at that time that the Indemnification Agreement was consequently a bogus and false document created and used by Koger and Purcell as part of their scheme to defraud CHNJ." (1st Am. Compl. ¶ 38.) CHNJ also learned that "MTGLQ never entered into any such Third Amendment to the [PSA] between MTGLQ and Purcell and that the signature on the bogus document provided by Koger and Purcell to CHNJ was a forgery . . . ." (1st Am. Compl. ¶ 39.) CHNJ asserts that "other documents and contracts Koger and Purcell provided to CHNJ that CHNJ relied upon to its detriment in continuing to deal with Koger and Purcell . . . were false and fraudulent and contained terms not reflective of a legitimate deal between Purcell and MTGLQ." (1st Am. Compl. ¶ 40.)[10]

---

[10] Plaintiff also claims that, as a result of the actions described above, Defendants were sued in Host Hotels & Resorts, L.P. v. Robert T. Koger and Molinaro Koger, Inc., Montgomery County Circuit Court, Maryland, Civ. No. V348208. (1st Am. Compl. ¶ 105.)

CHNJ asserts nine counts for relief: (1) fraud – intentional misrepresentation and concealment, (2) negligent misrepresentation, (3) unjust enrichment, (4) conversion, (5) intentional misrepresentation and fraudulent misuse of the corporate veil, alter ego and undercapitalization, (6) breach of contract, (7) malpractice, (8) breach of duty of good faith and fair dealing, and (9) New Jersey Civil RICO. Plaintiff seeks, inter alia, compensatory damages, consequential damages, punitive damages, attorney's fees, costs of suit, and interest.

## III. Standard and Scope of Review

The Court outlines the standard of review for a motion to dismiss in federal district court. In addition, the Court explains which materials it will consider at this procedural posture.

### A.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S.

12

544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 678.

Additionally, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 236 (3d Cir. 2008).

In their motion to dismiss, Defendants allege multiple facts that contradict Plaintiff's allegations.[11] The Court has not considered these allegations because, at this procedural stage, the Court must accept the allegations in Plaintiff's First Amended Complaint as true and may not consider facts alleged in Defendants' motion.

Plaintiffs erroneously describe the standard of review on a motion to dismiss under Rule 12. Plaintiffs argue that a motion

---

[11] Defendants allege, for example, that Plaintiff lacked the funds to purchase the Loan and that Plaintiff sought to purchase the Loan without disclosing its identity to the underlying mortgagee because CHNJ's principals (Rajni Patel and Ved Parkash) were also the principals of the hotel mortgagor (P&P Cherry Hill, LLC). (Def. Br. Supp. Mot. Dismiss at 1.)

to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Plaintiffs cite cases from 1974, 1984, and 1991 in support of this standard.

Plaintiffs seem unaware that pleading standards in federal court have changed in the past six years: Before the Supreme Court's decision in Twombly, the test as set out in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), only permitted district courts to dismiss a complaint for failure to state a claim if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. The Supreme Court rejected the "no set of facts" standard in Iqbal and Twombly. Iqbal "provide[d] the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

**B. Consideration of Documents Outside the Complaint**

Defendants attached six documents to their motion.[12] These documents were referenced in the First Amended Complaint, but

---

[12] The documents that Defendants attached are: (A) a Confidentiality Agreement made in favor of MTGLQ and entered into by Purcell Investments on January 20, 2011 [Docket Item 21-3]; (B) a Purchase and Sales Agreement dated April 27, 2011 between Purcell and MTGLQ [Docket Item 21-4]; (C) email correspondence attaching an Indemnification Agreement entered into on February 21, 2011 by P&P Cherry Hill Hospitality LLC,

Plaintiff did not attach them. Defendants argue that these documents belie the factual allegations in the First Amended Complaint. For example, Defendants argue that "the falsity of Defendants' alleged representations as to MTGLQ's desire to negotiate a loan with CHNJ are flatly contradicted by the express terms of the Confidentiality Agreement that is referenced in the First Amended Complaint." (Def. Br. Supp. Mot. Dismiss at 16.) Defendants argue that the Indemnification Agreement "specifically acknowledges that Plaintiff is inducing and instructing its counterparty (Purcell) and alleged agent to violate the terms of the Confidentiality Agreement with the Mortgagee from whom Plaintiff wishes to acquire the Loan." (Def. Br. Supp. Mot. Dismiss at 6.) Defendants also argue that the Second Amendment to the PSA specifically states that the $825,000.00 fee that CHNJ paid was "non-refundable." (Def. Br. Supp. Mot. Dismiss at 8.) And Defendants assert "the Indemnification Agreement contradicts any purported contract between Defendants and Plaintiff for Defendants to act as broker." (Def. Br. Supp. Mot. Dismiss at 28.)

---

CHNJ, Ved Parkash, and Rajni Patel in favor of Purcell [Docket Item 21-5]; (D) a Purchase and Sales Agreement, dated April 27, 2011, between CHNJ and Purcell [Docket Item 21-6]; (E) a First Amendment, dated May 19, 2011, to the Purchase and Sales Agreement between CHNJ and Purcell [Docket Item 21-7]; and (F) a Second Amendment, dated June 24, 2011, to the Purchase and Sales Agreement between CHNJ and Purcell [Docket Item 21-8].

Plaintiff argues, however, that the Court cannot consider these documents. CHNJ argues that these documents are all "inadmissible hearsay" because they were attached pursuant to a certification by counsel who did not have firsthand knowledge of the documents. (Pl. Opp'n at 8.) Plaintiff also asserts that the Confidentiality Agreement that Defendants attached is "untrustworthy" because "MTGLQ advised that it never entered the document and the document bears the signature only of Purcell and not of MTGLQ." (Pl. Opp'n at 11.) Plaintiff concludes that "[t]here is a real possibility the purported Confidentiality Agreement, like the Third Amendment, is forged."[13] (Pl. Opp'n at 11.) Plaintiff claims that it is "entitled to the benefit of its allegations that the Indemnity Agreement was a sham, that no confidentiality agreement existed, and the reasonable inference derived from those facts that the purported Confidentiality Agreement submitted by Defendants is a sham too." (Pl. Opp'n at 12.)

CHNJ attached two documents to its opposition [Docket Item 26]. The first document is, according to CHNJ, a copy of the Retainer Agreement that CHNJ and Koger entered into on November 12, 2010 and the second attachment is a copy of the PSA that CHNJ and Purcell entered into on April 27, 2011. [Docket Item

---

[13] The Court notes that neither party attached a copy of the Third Amendment.

16

26-1.] Defendants challenged the validity of the Retainer
Agreement that CHNJ attached. Defendants argued that the
document is called a "preliminary term sheet," contains language
stipulating that it is "non binding and is not intended to be,
and in no way creates, a contract of any kind," makes no
reference to any agency relationship, does not refer to CHNJ as
a party, and is signed by Ved Parkesh on behalf of SP NY LLC, a
third party that is not otherwise identified in the Complaint.
(Def. Reply at 10-11.)

Essentially, both CHNJ and the Koger Defendants have
disputed the validity of the attached documents. "As a general
matter, a district court ruling on a motion to dismiss may not
consider matters extraneous to the pleadings." In re Burlington
Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).
There is an exception to this rule: "a document integral to or
explicitly relied upon in the complaint may be considered. . .
." Id. at 1426. But for a court to consider such a document, the
document must be "undisputedly authentic." Pension Ben. Guar.
Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d
Cir. 1993).

The Court cannot consider the documents that the parties
attached to their briefing because they are not undisputedly
authentic. Plaintiffs allege that the documents Defendants

17

attached are shams, untrustworthy, and potential forgeries. Defendants argue that the Retainer Agreement that Plaintiff attached is not a retainer agreement and does not involve the parties to this action. Defendants cite Warren Gen. Hosp. v. Amgen Inc., CIV.A.09-4935 (SRC), 2010 WL 2326254 (D.N.J. June 7, 2010), aff'd, 643 F.3d 77 (3d Cir. 2011), for the proposition that, "[w]hen there is a disparity between a complaint's allegations and the written instruments on which the allegations or claims are based, the written instrument controls." Id. at *3. But the Warren General Hospital case notes that that documents that are not attached to the Complaint must be "undisputedly authentic" to be considered. Id. at *3.[14]

The documents that the parties attached to their briefing are not undisputedly authentic and, therefore, the Court cannot consider them at this time.

---

[14] Defendants also argue that "[e]ach of the Indemnification Agreement, the Bank End PSA, First Amendment, and Second Amendment, . . . are properly considered . . . because they bear Plaintiff's signature and are free from dispute as to their authenticity or inaccuracy as to the terms of the understandings which they reflect." (Def. Reply at 3.) These documents may well be dispositive at a later procedural posture but, at this stage, the Court cannot consider them to be free from dispute because Plaintiff has challenged their validity.

**IV. ANALYSIS**

In this section, the Court examines each of Defendants'
arguments, aside from arguments relating to the attached
documents, for dismissing Plaintiff's claims.

**A. Heightened Pleading Requirements**

Defendants argue that Plaintiff did not comply with the
heightened pleading requirements that apply to fraud claims
under Fed. R. Civ. P. 9(b) and, therefore, counts (1)
intentional misrepresentation, (2) negligent misrepresentation,
(5) intentional misrepresentation and fraudulent misuse of the
corporate veil, and (9) New Jersey Civil RICO must be dismissed.

Fed. R. Civ. P. 9(b) mandates that "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake." This rule requires "at a
minimum" that plaintiffs support their fraud allegations "with
all of the essential factual background that would accompany
'the first paragraph of any newspaper story'-that is, the 'who,
what, when, where and how' of the events at issue." In re
Rockefeller Ctr. Properties, Inc. Sec. Litig., 311 F.3d 198, 217
(3d Cir. 2002).

Plaintiff's First Amended Complaint describes its
allegations with specificity: For example, Plaintiff described,
the Loan with particularity; alleged that CHNJ first consulted

Koger on November 12, 2010 and that the parties entered into a
Retainer Agreement, a PSA, and subsequent Amendments to the PSA;
outlined the alleged misrepresentations that Koger made,
including a misrepresentation that MTGLQ required a
Confidentiality Agreement and a forged Third Amendment to the
PSA; and alleged that Defendants defrauded Plaintiff out of
$2,125,000.00. These factual allegations, which the Court must
assume to be true at this procedural posture, provide enough
particularity to satisfy Rule 9(b). The purpose of Rule 9(b) is
"to place the defendants on notice of the precise misconduct
with which they are charged, and to safeguard defendants against
spurious charges of immoral and fraudulent behavior." Seville
Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791
(3d Cir. 1984). Plaintiff has satisfied this purpose.

Defendants argue that the First Amended Complaint fails to
identify actionable misrepresentations on which Plaintiff was
entitled to reasonably rely. Defendants argue that a promise to
perform in the future may only serve as the basis of a fraud
claim when the promisor knows at the time of promising that he
has no intention of fulfilling the promise. "Statements as to
future or contingent events, to expectations or probabilities,
or as to what will or will not be done in the future, do not
constitute misrepresentations, even though they may turn out to

20

be wrong." <u>Alexander v. CIGNA Corp.</u>, 991 F. Supp. 427, 435
(D.N.J. 1998), <u>aff'd</u>, 172 F.3d 859 (3d Cir. 1998). Defendants
assert, "The First Amended Complaint and written instruments
upon which Plaintiff expressly relies consistently demonstrate
that Defendants' intention to close the transaction was in fact
plausible." (Def. Br. Supp. Mot. Dismiss at 17.)

   As explained above, the Court cannot, at this procedural
posture, consider any of the documents that Defendants attached
to their motion to dismiss. Moreover, even if it was plausible
for Defendants close the transaction, there are other
misrepresentations that form the basis of Plaintiff's claims.
For example, Plaintiff alleges, <u>inter alia</u>, that Defendants
presented fraudulent documents to CHNJ to induce CHNJ to provide
them with money and that Defendants wrongfully obtained
$2,125,000.00 from CHNJ. These allegedly fraudulent acts are
more than representations about future conduct. Even if
Plaintiff's allegations regarding future conduct were
impermissible, Plaintiff has made other allegations that are
sufficient to establish claims for relief.

   Defendants also argue that Plaintiff cannot show reasonable
reliance on Defendants' misrepresentations when Plaintiff
discovered Defendants' misrepresentation about the
$15,500,000.00 sale price and proceeded to contract business

with the Defendants anyway. Defendants cite cases in which courts prohibited plaintiffs from maintaining fraud claims when the plaintiffs were aware of the specific misrepresentations at issue. See, e.g., Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 746 (3d Cir. 1996) ("Ideal cannot now claim that it detrimentally relied on Tuscan's intentional misrepresentation because Ideal knew it was being overcharged for purchases almost from the start"); Sklodowsky v. American Developers of New Jersey, 2008 WL 2744247 (N.J. App. Div. July 16, 2008) (affirming grant of summary judgment because plaintiff had been informed that seller of property was married and seller's spouse might not agree to sale and, therefore, defendants were not responsible when sale failed because spouse decided not to sign). These cases are distinguishable, however, because they involve specific misrepresentations of which the Plaintiff was aware. Plaintiff CHNJ alleges multiple misrepresentations, not just the inflated sale price. Plaintiff alleges that Defendants made misleading statements about, inter alia, the Confidentiality Agreement, the Indemnification Agreement, and the state of the negotiations with MTGLQ. Plaintiff has alleged multiple misrepresentations of which it was unaware and, therefore, the Court will not dismiss Plaintiff's fraud claims.[15]

---

[15] Defendants also argue that, because Plaintiff had

**B. Piercing the Corporate Veil**

Defendants argue that Plaintiff fails to state facts sufficient to state a claim to pierce the corporate veil of Molinaro Koger, Inc. or Purcell.

In the absence of circumstances such as fraud or injustice, a court will not generally pierce the corporate veil. Lyon v. Barrett, 89 N.J. 294, 300 (1982). In New Jersey, two elements are required to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a

---

representation, was a sophisticated investor, and had an opportunity to conduct due diligence, Plaintiff cannot claim that it relied on Defendants' alleged misrepresentations. For example, Defendants cite Dare Investments, LLC v. Chicago Title Ins. Co., Civ. No. 10-6088 (DRD), 2011 WL 2600594 (D.N.J. June 29, 2011), in which the court held that plaintiff Dare could not claim it reasonably relied on alleged misrepresentations because "Dare's arguments in support of reasonable reliance are factually contradicted by the record, which clearly indicates that Dare, through its attorneys, investigated the validity and enforceability of the . . . Mortgage and reviewed the prior litigation surrounding it." Id. at *7. The Dare court emphasized that "Dare's allegations of fraud are particularly disingenuous considering that the title policy itself refers to the prior litigation . . . and the [parties]' positions regarding the condition of the . . . Mortgage." Id. at *7 n.8. In the Dare case, the information that the defendants allegedly withheld was accessible through documentary evidence in the record. In this case, based on the facts in the First Amended Complaint, it is not clear that Plaintiff could have discovered all of Defendants' alleged misrepresentations through record research.

fraud or promote injustice." State Capital Title & Abstract Co.
v. Pappas Bus. Services, LLC, 646 F. Supp. 2d 668, 679 (D.N.J.
2009) (internal citations omitted). Various factors may be
considered in making these determinations, including, inter
alia, failure to observe corporate formalities, gross
undercapitalization, absence of corporate records, siphoning of
funds of the corporation, and the corporation's existence as a
façade for the operations of the dominant stockholder. Craig v.
Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988)
(outlining factors for piercing corporate veil in context of
analyzing case under New Jersey law).

Plaintiff has not pled facts establishing any of these
factors. Plaintiff asserts that "[t]he Defendant, Robert T.
Koger has utilized the corporation, Molinaro Koger, Inc., and
the limited liability company, Purcell, as alter egos and to
otherwise insulate itself from personal liabilities . . . ."
(1st Am. Compl. ¶ 71.) Plaintiff has provided no factual support
for these conclusory assertions. Count Five, which alleges
intentional misrepresentation and fraudulent misuse of the
corporate veil, alter ego and undercapitalization, shall be
dismissed without prejudice and with leave to amend.

24

**C. New Jersey Civil RICO**

New Jersey's Civil RICO statute mandates: "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . . ." N.J. Stat. Ann. § 2C:41-2(c). There are four necessary elements: (1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity.

Defendants challenged the enterprise component of Plaintiff's RICO claim.[16] An enterprise must consist of more than one person or entity. See State v. Kuklinski, 234 N.J. Super. 418, 422 (Ch. Div. 1988) (Since defendant "had no real employees or associates with which to establish an enterprise, Count One is deficient and must be dismissed.").

Plaintiff has pled that there were three entities, Robert T. Koger, Molinaro Koger, and Purcell, that "were each an individual enterprise and collectively were a group associated in fact that formed an enterprise." (1st Am. Compl. ¶ 88.) These

---

[16] Defendants also argue that Plaintiff's RICO claim fails because Plaintiff has not pled the requisite predicate acts of fraud. As discussed above, Defendants' arguments about Plaintiff's failure to plead fraud lack merit at this procedural stage.

three entities are sufficiently numerous to establish an enterprise.

At this procedural posture, the Court finds that Plaintiff has adequately pled the existence of an enterprise because Plaintiff has argued that Robert T. Koger, Molinaro Koger, and Purcell were all involved in the scheme to defraud. Defendants' motion to dismiss Plaintiff's RICO claim is denied.[17]

### D. Unjust Enrichment

Defendants next assert that Plaintiff's unjust enrichment claim must fail because the amounts that Plaintiff seeks to recover are governed by express agreements and, therefore, Plaintiff's remedy lies in breach of contract, not unjust enrichment. "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant

---

[17] Defendant argues that "the First Amendment Complaint asserts that [Molinaro Koger] and Purcell are merely alter egos of Koger" and, therefore, "the First Amended Complaint asserts a one person enterprise." (Def. Br. Supp. Mot. Dismiss at 23.) Defendant also argues, as discussed above, that Plaintiff did not adequately plead that Purcell and Molinaro Koger were Robert T. Koger's alter egos and therefore Plaintiff had not established a claim for piercing the corporate veil. It seems incongruous to argue, on the one hand, that the Plaintiff cannot assert a claim for piercing the corporate veil because it has not pled that Purcell and Molinaro Koger were alter egos and then, on the other hand, to argue that the RICO claim must fail because Purcell and Molinaro Koger are alter egos. As explained above, the RICO claim will stand and the corporate veil claim will be dismissed without prejudice. The Court does not, at this time, take a position on whether Plaintiff could, in an amended pleading, sustain claims for both RICO and piercing the corporate veil.

at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519, 526 (1994). It is an "uncontested truth that recovery under quasi-contractual or other equitable claims is precluded in the presence of a valid contract." Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Group, Inc., CIV. 05-3362 (GEB), 2006 WL 2788369, *5 (D.N.J. Sept. 27, 2006).

But, at this procedural posture, both unjust enrichment and contract claims can survive through alternative pleading. The Federal Rules of Civil Procedure allow a Plaintiff to:

> set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2). In other words, "Plaintiff is permitted to plead alternative theories of recovery." MSKP Oak Grove, LLC v. Venuto, 875 F. Supp. 2d 426, 442 (D.N.J. 2012) (declining to dismiss unjust enrichment claim on the basis of there being an adequate remedy at law available); see also In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004), (Plaintiffs "are clearly permitted to plead alternative theories of recovery. Consequently, it would be premature at this stage

of the proceedings to dismiss the . . . unjust enrichment claims")[18].

The alternative pleading rule applies even when Plaintiff has pled both a contract and an unjust enrichment claim. See Titan Stone at *5 (citing alternative pleading provision of Federal Rules of Civil Procedure and then stating, "A plaintiff may therefore put forth contractual, quasi-contractual and other equitable claims for relief in its complaint, even if the plaintiff has not sought rescission of the contract").

Allowing the unjust enrichment claim to proceed makes particular sense in this case because the parties dispute the validity of the contracts: Defendants dispute that the parties entered into a valid retainer agreement and Plaintiffs dispute the validity of the Indemnification Agreement and the amendments to the PSA on the basis of fraudulent inducement or forgery. "Courts typically allow a plaintiff to plead both a breach-of-contract claim and an unjust-enrichment claim only where there is some dispute as to whether a valid, enforceable written contract exists." Montanez v. HSBC Mortg. Corp. (USA), 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012) (dismissing unjust enrichment

---

[18] A subsequent district court decision in the K-Dur litigation, involving antitrust and class certification issues, was appealed to the Third Circuit, which affirmed in part and reversed in part. In re K-Dur Antitrust Litig., 686 F.3d 197 (3d Cir. 2012).

claim because "there is no dispute that the mortgage contract was valid and enforceable").[19]

Therefore, at this procedural stage, the Court will allow Plaintiff's unjust enrichment claim to proceed.

**E. Conversion**

Defendants also argue that Plaintiff failed to assert a claim for conversion because "[t]he First Amended Complaint fails to allege that Defendants exercised dominion or wrongfully interfered with any of CHNJ's property." (Def. Br. Supp. Mot. Dismiss at 25.) "The tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Advanced Enterprises Recycling, Inc. v. Bercaw, 376 N.J. Super. 153, 161 (App. Div. 2005).

Defendants argue that the First Amended Complaint "concedes that $1,150,000.00 went to MTGLQ with CHNJ's consent" and that, pursuant to the Second Amendment, another $825,000.00 was

---

[19] Defendants cite Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc., Civ. No. 11-2775 JBS/JS, 2012 WL 762498 (D.N.J. Mar. 6, 2012), for the proposition that "[i]t is well established that claims of quantum meruit and unjust enrichment do not exist where a valid express contract exists concerning the same subject matter." Id. at *8. As explained above, however, it is not yet clear whether there is a valid express contract in this case.

transferred with CHNJ's consent.[20] (Def. Br. Supp. Mot. Dismiss at 25.) Plaintiff argues that it was fraudulently induced to transfer funds to Defendants and that, when the sale failed, Defendants illegally retained these funds.  Defendants' argument that CHNJ consensually transferred funds to Defendants does not defeat Plaintiff's conversion claim because the essence of this action is that Defendants defrauded Plaintiff by taking its monies without consummating the Loan sale and without refunding the monies. It may be true, as Defendants argue, that the money transfers were consensual and non-refundable, but the Court cannot make those determinations at this procedural posture. Defendants' motion to dismiss Plaintiff's conversion claim is denied.[21]

### F. Existence of a Contract

Defendants next assert that Plaintiff's breach of contract, good faith and fair dealing, and malpractice claims fail because the First Amended Complaint fails to allege an enforceable contract for Robert Koger and Molinaro Koger, Inc. to act as

---

[20] As explained above, the Court will not consider the text of the Second Amendment at this procedural posture.

[21] Defendant also argues that Plaintiff's assertion that it loaned Defendants $150,000.00 cannot give rise to a conversion claim and instead, if anything, should give rise to a debtor-creditor relationship. Plaintiff's conversion claim is based, however, on funds beyond the $150,000.00 and therefore, Plaintiff's conversion claim will stand.

CHNJ's broker. Defendants argue that there was no valid contract
because (1) the First Amended Complaint does not specify that a
valid brokerage contract existed or that CHNJ performed its
obligations under such an agreement and (2) Plaintiff does not
allege what Koger received as consideration for this purported
contract.

Plaintiff alleges that it entered into a Retainer Agreement
with Koger to purchase the loan and that, pursuant to this
Retainer, Plaintiff gave Koger a refundable deposit of
$1,000,000.00. (1st Am. Compl. ¶ 12.) Plaintiff also asserts
that the parties also agreed to a $500,000.00 fee to Koger for
the consultancy. (1st Am. Compl. ¶ 29.) These statements,
combined with Plaintiff's general recitation of events involving
Koger's negotiations on CHNJ's behalf with MTGLQ and Purcell,
are sufficient to assert claims for breach of contract at this
procedural posture. Defendants' motion to dismiss Plaintiff's
breach of contract, good faith and fair dealing, and malpractice
claims is denied.

### G. In Pari Delicto Doctrine

Finally, Defendants argue that all of Plaintiff's claims
are precluded by the in pari delicto doctrine. "The doctrine of
in pari delicto is a defense which means that "where the wrong
of both parties is equal, the position of the defendant is the

stronger." <u>Stella v. Dean Witter Reynolds, Inc.</u>, 241 N.J. Super. 55, 73 (App. Div. 1990). Defendants argue that "[t]he Indemnification Agreement aptly evidences Plaintiff's mutual responsibility in coordinating its attempt to indirectly purchase the Loan" and that Plaintiff's request to Purcell to arrange for the purchase and sale of the Loan "constituted intentional and tortious interference with an existing contract. . . ." (Def. Br. Supp. Mot. Dismiss at 29.)

Defendants' <u>in pari delicto</u> argument is predicated upon the Indemnification Agreement and facts that Defendants allege in their motion to dismiss. As explained above, the Court cannot consider either of these sources at this procedural posture. The Court cannot determine, from the First Amended Complaint, that Plaintiff was a wrongdoer, much less determine that Plaintiff's alleged wrongdoing was equal to or exceeded the Defendants' alleged wrongdoing. Defendants' motion to dismiss all of Plaintiff's claims on <u>in pari delicto</u> grounds is denied.


**V. CONCLUSION**

The Court holds as follows: (1) the Court will not consider any of the documents that Defendants attached to their motion to dismiss or that Plaintiff attached to its opposition because the documents are not undisputedly authentic; (2) Count Five, which

alleges intentional misrepresentation and fraudulent misuse of the corporate veil, alter ego and undercapitalization, shall be dismissed without prejudice and with leave to amend; and (3) Defendants' motion to dismiss is denied in all other respects.

The accompanying Order will be entered.


__March 21, 2013__                     __s/ Jerome B. Simandle__
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge

33